# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GERALDINE A. TRICE**, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-cv-1564 (TSC) |
| **FEDERAL DEPOSIT INSURANCE CORPORATION**, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

For the reasons set forth below, the court will deny Plaintiff Geraldine Trice's Motion for

Reconsideration, ECF No. 16, of the court's Order granting Defendant's Motion to Dismiss.

ECF Nos. 14, 15.

### I. BACKGROUND

In 1999 Trice executed a mortgage note and trust deed in favor of Washington Mutual

Bank ("WaMu"). Compl. ¶ 48; Compl. Ex. 1-1 at ECF p. 64.[1] Rather than requiring Trice to

make payments that included escrow amounts for taxes and insurance, WaMu allowed her to pay

her insurance and taxes directly. ECF No. 11 Pls. Response at p. 2; Compl. Ex. 1-1 at ECF p. 83.

WaMu closed in September 2008 and the FDIC was appointed as its receiver. Compl. ¶ 51; *see*

*Alkasabi v. Wash. Mut. Bank, F.A.*, 31 F. Supp. 3d 101, 104 (D.D.C. 2014). JPMorgan Chase

---

[1]  Trice attached multiple exhibits to her Complaint that are not identified sequentially, and that contain pages which are also not numbered sequentially. Accordingly, for ease of reference, the court will cite to the relevant ECF page numbers when referring to exhibits attached to the Complaint. Those exhibits are ECF No. 1-1 and ECF No. 1-2.

Bank, N.A. ("Chase") later acquired WaMu's assets, along with the right to service WaMu's loans. Compl. Ex. 1-1 at ECF p. 122.

On September 30, 2009, approximately one year after WaMu closed, Trice received a letter from Chase notifying her that it would formally begin servicing her loan. *See* Compl. Ex. 1-1 at ECF p. 80. Sometime later, Chase notified Trice that, going forward—consistent with the terms of her mortgage agreement—her payments would include escrow amounts because Chase had been forced to pay a delinquent tax bill on her behalf. *Id.* at ECF p. 83. Accordingly, Chase demanded that Trice remit future mortgage payments that included the escrow amounts and warned her that it would not consider her account in good standing if she submitted partial payments. *Id.* Trice admits that despite receiving this notification, she did not send payments that included the escrow amount, and instead continued paying both the insurance and taxes directly. Compl. ¶ 7; Pls. Resp. at p. 3. "Ultimately, Trice's property was sold at a non-judicial foreclosure sale." *Trice v. Fed. Deposit Ins. Corp.*, No. 17-CV-1564 (TSC), 2019 WL 1766158, at *1 (D.D.C. Apr. 22, 2019).

In June 2016, the FDIC—in its capacity as WaMu's receiver—sent Trice a letter indicating that she might have a claim against WaMu and providing instructions for filing a claim. Compl. Ex. 1-1 at ECF p. 2. Trice submitted a claim on or around August 16, 2016, in which she challenged the foreclosure and alleged, *inter alia*, that Chase had unlawfully required her to include the escrow amounts in her mortgage payment. *Trice*, 2019 WL 1766158, at *2.

On August 31, 2016, the FDIC sent Trice a letter disallowing the claim because it "ha[d] not been proven to the satisfaction of the Receiver. 12 U.S.C. § 1821(d)(5)(D)." Compl. ECF No. 1-1 at ECF pp. 57. The letter informed Trice that if she disagreed with the agency's decision, she had sixty days from the date of the letter to file a lawsuit in federal court, and that if

she did not file a timely lawsuit, the claim disallowance would become final and she would "have no further rights or remedies with respect to [the] claim." *Id.* (citing 12 U.S.C. § 1821(d)(6)(B)(ii)). The letter also informed Trice that she was required to file any lawsuit challenging the disallowance in the district where the failed institution's principal place of business was located or in the District of Columbia. *Id.*

It is undisputed that WaMu's principal place of business was in the Western District of Washington and that Trice did not seek judicial review of the FDIC's decision in that district or in the District of Columbia within the sixty-day period. *Trice*, 2019 WL 1766158, at *2. Instead, almost one year after the FDIC disallowed her claim, she filed this suit solely against the FDIC, seeking compensatory damages and a judicial declaration that her loan was "void as a result of Chase's" alleged misconduct. *Id.*

The FDIC moved to dismiss this action, ECF No. 7, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and this court granted the motion. *Trice*, 2019 WL 1766158. Trice has challenged the dismissal by filing "Plaintiff's Response From the Release From the Order of Granting Agency Motion to Dismiss and Declaration of Geraldine A. Trice," ECF No. 16 (hereinafter "Mot. to Reconsider"), in which she argues that the court misinterpreted the law, the dismissal order was void, and that this court must recuse itself from this case due to alleged collusion with the FDIC. Given these arguments the court will treat Trice's "Response" as a Motion for Reconsideration.

After the FDIC filed its opposition, ECF No. 17, to Trice's motion, this court entered an order allowing her to file a reply brief and warning her that failure to timely file a reply addressing the arguments the FDIC raised in its opposition could result in the court treating the

agency's arguments as conceded.  6/17/19 Min. Order.  Trice did not file a reply brief or request an extension of the deadline.

## II.  ANALYSIS

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgement, order or proceeding" on six bases.  Trice relies on two of those bases: the fraud provision found in subsection (b)(3), and subsection (b)(4), which provides for relief where a judgment is "void."  Mot. to Reconsider at 2.

Rule 60(b)(3) relief for "[f]raud on the court [involves] fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  Fraud upon the court refers only to very unusual cases involving far more than an injury to a single litigant.  Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony." *Davis v. U.S. Dep't of Health & Human Servs.*, 968 F. Supp. 2d 176, 184 (D.D.C. 2013), *aff'd*, 2014 WL 2178705 (D.C. Cir. Apr. 25, 2014).

Trice has not asserted any facts suggesting fraud on the court.  She challenges, without legal support, the court's application of certain provisions of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").  *See* Mot. to Reconsider at 5–6; Trice Decl. ¶¶ 14–16.[2]  Thus, she is not entitled relief pursuant to 60(b)(3).

"Relief under Rule 60(b)(4) is not available merely because a disposition is erroneous. Rather, before a judgment may be deemed void within the meaning of the rule, 'it must be determined that the rendering court was powerless to enter it.'" *Combs v. Nick Garin Trucking*,

_____

[2]  Trice attached what she describes as an "Declaration" to her Motion.

825 F.2d 437, 442 (D.C. Cir. 1987). Relying on 12 U.S.C. § 1821(d)(13)(D) of FIRREA, Trice argues this court's judgment is void for want of subject matter jurisdiction and because the court purportedly made findings of fact. Mot. to Reconsider at 2–3.[3]

Trice is incorrect. The court did not make findings of fact, but merely described the history of Trice's numerous lawsuits and administrative challenges. *See* 2019 WL 1766158, at *1–3. With respect to the court's jurisdiction in a FIRREA case, the D.C. Circuit has clarified that

> no court has jurisdiction to hear any "claim or action for payment from" or "action seeking a determination of rights with respect to" any "asset" of a failed bank for which the FDIC is receiver, <u>with one relevant exception</u>. Under § 1821(d)(6), both the United States District Court for the District of Columbia and the district court for the district where the financial institution has its principal place of business have <u>jurisdiction to review de novo claims filed with, and processed by, the FDIC under its administrative claims process</u>. *See Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 391–92 (3d Cir.), *cert. denied,* 502 U.S. 981, 112 S. Ct. 582, 116 L.Ed.2d 608 (1991). Such an action must be filed in district court within 60 days after the administrative claim is disallowed, or within 60 days after the expiration of the 180–day period allowed for processing the administrative claim, whichever comes first. 12 U.S.C. § 1821(d)(6).

> The effect of these provisions, read together, is to require anyone bringing a claim against or "seeking a determination of rights with respect to" the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process. *Office and Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63, 65–66 (D.C. Cir. 1992).

---

3  Section § 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

*Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399–1400 (D.C. Cir. 1995) (emphasis added). Once a claimant has exhausted their administrative remedies, they may seek relief in federal court. *See id.*

In contrast, the provision Trice cites, Section 1821(d)(13)(D), applies to claimants who have not exhausted their administrative remedies. *See id.* at 1400. For those claimants, Section 1821(d)(13)(D) "acts as a jurisdictional bar to [district court] claims or actions." *Id.* Trice—who did exhaust her remedies—is not one of those claimants. Thus, she is not entitled to relief on the basis that this court's judgment is void for want of jurisdiction.

Trice next argues that the court improperly relied on 12 U.S.C. § 1821(d)(5)(d) in finding that she was required to file her lawsuit in the proper District Court within sixty days after the FDIC disallowed her claim. Mot. to Reconsider at 5–9; Trice Decl. ¶¶ 14–16. She contends that this subdivision does not apply to her because she is not a "creditor."

But the Court of Appeals rejected this same argument raised by the debtors in *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400–02 (D.C. Cir. 1995). The Court held that the § 1821(d) sixty-day "jurisdictional bar is not limited to claims by 'creditors,' but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver, including debtors' claims." *Id.* at 1402.

Mounting an alternative challenge to the sixty-day limitations bar, Trice cites 28 C.F.R. § 14.9 and argues that she had six months to file her lawsuit. As an initial matter, Trice did not file her lawsuit within six months after the FDIC disallowed her claim. But, even if she had, 28 C.F.R. § 14.9 applies to denials of administrative claims brought pursuant to the Federal Tort Claims Act (FTCA), *see* 28 U.S.C. §§ 2401; 2675. Here there is no evidence that Trice brought a FTCA claim. Nor could she, as discussed in this court's earlier Memorandum

Opinion, because fraud claims are not actionable under the FTCA. *See Trice*, 2019 WL 1766158, at *6–7.

Trice next argues that she was entitled to a hearing or "adjudicatory trial" before the FDIC, Mot. to Reconsider at 7, but she cites to FIRREA hearing provisions that only apply when the claimant forgoes filing a lawsuit, requests an administrative review of a denied claim, and the FDIC agrees to the request for review. 12 U.S.C. § 1821(d)(6)–(7).

Trice's Administrative Procedures Act and conspiracy claims, Mot. to Reconsider at 4, 7, 11, have already been rejected by this court. *See Trice*, 2019 WL 1766158, at *6. And she cannot raise new causes of action in a motion for relief from judgment. *See* Mot. to Reconsider at 2–4, 11–12; Trice Decl. ¶¶ 9, 17 (attempting to assert claims pursuant to 12 U.S.C. § 1981, the First, Fourteenth, and Fifth Amendments to the United States Constitution).

Finally, Trice asks the court to recuse itself from this case pursuant to 18 U.S.C. § 4, a "misprision of felony" criminal statute, contending that the judgment in this case "constitutes an overt act and conspiracy with counsel constituting an obstruction of the due administration of justice" in violation of 18 U.S.C. § 1503, a criminal statute relating to influencing or threatening judicial officers and judicial proceedings, as well as 18 U.S.C. § 3, a criminal "accessory after the fact" statute. Mot. to Reconsider at 2–3, 11–12; Trice Decl. ¶¶ 5, 14, 18.

As an initial matter, "[c]ourts are 'quite reluctant to infer a private right of action from a criminal prohibition alone.'" *Peavey v. Holder*, 657 F. Supp.2d 180, 190–91 (D.D.C. 2009), *aff'd*, No. 09-5389, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010) (alterations omitted) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994)). Accordingly, "unless a specific statute provides for a private right of action, courts have found that violations of Title 18 are properly brought by the United States government through criminal

proceedings and not by individuals in a civil action." *Hallal v. Mardel*, No. 1:16-CV-01432DADSAB, 2016 WL 6494411, at *3 (E.D. Cal. Nov. 2, 2016) (citing *Abou–Hussein v. Gates*, 657 F. Supp. 2d 77, 79 (D.D.C. 2009); *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007); *Smith v. Gerber*, 64 F.Supp.2d 784, 787 (N.D. Ill. 1999)). Trice has not cited to any case or statute allowing a private right of action for the criminal statutes she mentions in her motion.

With respect to her request that this court recuse itself from this proceeding, Trice has provided no basis for recusal; her request appears to be based on her disagreement with the court's rulings. Judicial rulings alone seldom provide a basis for disqualification or recusal. *Liteky v. United States*, 510 U.S. 540, 544 (1994); *see also United States v. Hite*, 769 F.3d 1154, 1172 (D.C. Cir. 2014) (reiterating that rulings alone are almost never a basis for recusal). Rather, pursuant to 28 U.S.C. § 455(a), a judge "shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." A judge shall also disqualify themselves in the following circumstances:

"(1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2)  Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3)  Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4)  He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5)  He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

   (i)  Is a party to the proceeding, or an officer, director, or trustee of a party;

   (ii)  Is acting as a lawyer in the proceeding;

   (iii)  Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

   (iv)  Is to the judge's knowledge likely to be a material witness in the proceeding."

28 U.S.C. § 455.  Recusal is appropriate

[w]henever a party to any proceeding in a district court makes and files a timely and <u>sufficient</u> affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144 (emphasis added).

Trice has not filed an affidavit, nor asserted any facts supporting her request for recusal or disqualification.  Instead, she has challenged judicial rulings, and therefore relief is not warranted.  *See Murchison v. Inter-City Mortg. Corp. Profit Sharing & Pension Plans*, 503 F. Supp. 2d 184, 188 (D.D.C. 2007) (holding that judges must "be alert to avoid the possibility that those who would question his [or her] impartiality are in fact seeking to avoid the consequences of . . . [an] adverse decision.") (citations omitted); *see also Rodriguez ex rel. Rodriguez-Hazbun v. National Center for Missing & Exploited Children*, 2005 WL 736526 at *2, *16–*17 (D.D.C.

2005) (holding that courts have refused to disqualify themselves unless there is a legitimate basis in order to prevent plaintiffs from "judge-shopping") (citations omitted).

### III. CONCLUSION

For the reasons set forth above, by separate order, the court will deny Trice's Motion for Reconsideration.

Date: November 28, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge